

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| HENRY JONES, JR., | ) |
| Plaintiff, | ) Case No. 09 C 3122 |
| v. | ) Magistrate Judge |
| | ) Martin C. Ashman |
| BULL MOOSE TUBE COMPANY, and UNITED STEEL WORKERS OF AMERICA UNION LOCAL 9777, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Henry Jones ("Jones") sued Bull Moose Tube Company ("Bull Moose") and United Steel Workers of America Union Local 9777 ("the Union") (collectively "Defendants"), under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, for breach of the Union's duty to fairly represent Jones and for Bull Moose's breach of contract. Currently before this Court is Defendants' Motion to Dismiss. The parties consented to have this Court conduct any and all proceedings in this case, including the entry of final judgment. 28 U.S.C. § 636(c); N.D. Ill. R. 73.1. For the reasons stated below, the Court grants Defendants' motion.

## I. Background

On or around August 18, 1998, Jones–who is black–started working for Bull Moose, a Missouri-based manufacturing company that operated a facility in Illinois. (Compl. ¶¶ 5-6.) During his employment with Bull Moose, Jones was a member of the Union, a labor organization

operating at 8910 South Harlem Avenue, Bridgeview, Illinois, which had entered into a collective bargaining agreement with Bull Moose ("the CBA"). (*Id.* at ¶¶ 7-8.) The CBA was effective from October 11, 2003, through October 12, 2007. (*Id.* at ¶ 8.)

At some point during Jones' employment, Bull Moose promoted him to "Assistant Operator" on Mill 4. (*Id.* at ¶ 12.) Jones worked on "Shift 1," which meant he worked from 12:00 a.m. until 8:00 a.m. (*Id.* at ¶¶ 6-17.) Sometime prior to September 4, 2007, Bull Moose asked Jones to train as a "stockman" on a machine called a "slitter."[1] (*Id.* at ¶ 20.)

After Jones declined, Bull Moose asked other Shift-1 employees if they would train on the slitter, but, like Jones, they declined. (*Id.* at ¶¶ 21-23.) At least one of these employees had less seniority than Jones, and all of them were a different race than Jones. (*Id.* at ¶¶ 24-27.) Bull Moose could not obtain any volunteers to train on the slitter, so it ordered Jones, who repeatedly stated his unwillingness to train on this machine, to do so. (*Id.* at ¶¶ 28-29.) It scheduled Jones to receive two hours of training on the slitter, apparently to start on September 4, 2007.[2] (*Id.* at ¶ 34). Jones' supervisor, Scott Cary, acknowledged on September 4, 2007, that Jones did not agree to train on the slitter. (*Id.* at ¶¶ 36-37.) After his shift on that day, Jones punched out of work and went home. (*Id.* at ¶ 38.)

The following day, Bull Moose suspended Jones, pending an investigation, for violating Intolerable Offense No. 17–i.e., for leaving work during work hours without permission . (*Id.* at ¶¶ 39-40.) Nine days later, on September 14, 2007, Bull Moose terminated Jones for this

---

[1] This position is a "bid" position, which means that employees place bids to obtain it. (*Id.* at ¶ 30.) Jones never bid on this position. (*Id.* at ¶ 31.)

[2] The complaint does not state when this training was scheduled to take place, but it appears from the facts that it was supposed to occur on September 4, 2007.

violation. (*Id.* at ¶¶ 40-41.) The CBA requires Bull Moose to have just cause to terminate Jones. (*Id.* at ¶ 42.)

Not pleased with his termination, Jones filed a grievance, which went to arbitration on September 5, 2008, where the Union represented Jones. (*Id.* at ¶¶ 44-47.) The arbitrator upheld Bull Moose's decision to terminate Jones. (*Id.* at ¶ 49.)

Jones subsequently filed suit in this Court, alleging in his complaint that the Union breached its duty of fair representation, and Bull Moose breached the CBA. The portion of the complaint relating to the breach of duty of fair representation alleges the following:

> 52. Defendant breached its duty to fairly represent Plaintiff at the arbitration hearing and demonstrated arbitrariness, discrimination, and bad faith as follows:
>
> A. Failing and refusing to focus on the key issue of Plaintiff's Grievance, that the Company did not have the right to force Plaintiff to train on the Slitter as a Stockman, a bid position;
>
> B. Failing and refusing to demand strict compliance with the plain language of the [CBA];
>
> C. Failing and refusing to call critical witnesses in support of Plaintiff's defense;
>
> D. Failing and refusing to introduce evidence of similarly situated non African-American's [*sic*] who were treated differently than Plaintiff; and
>
> E. Failing and refusing to advise Plaintiff that he was entitled to secure his own independent legal counsel to assist with his hearing.

(*Id.* at ¶ 52.)

## II. Materials Considered by the Court

While Defendants brought this motion under FED. R. CIV. P. 12(b)(6) ("Rule 12"), Jones attached two exhibits to his brief that he failed to attach to his complaint: the CBA (Pl.'s Opp'n Ex. A), and the Arbitration Opinion and Award (*id.* at Ex. B). Ordinarily, the court's consideration of materials not attached to the complaint transmutes a motion to dismiss into one for summary judgment. FED. R. CIV. P. 12(d). Although the court may exclude evidence to prevent its application, that rule is mandatory, not permissive. *Id.* ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to *and not excluded* by the court, the motion *must* be treated as one for summary judgment under Rule 56.") (emphasis added).

But this rule, like all others, has exceptions–one of which operates when a district court considers "documents attached to a motion to dismiss [as] part of the pleadings [that] . . . are referred to in the plaintiff's complaint and are central to his claim." *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994).[3] If those conditions are satisfied, the motion to dismiss does not morph into one for summary judgment. *Id.*

At oral argument, the parties stipulated that this Court could consult these materials in its determination of the motion to dismiss without converting it into a motion for summary

---

[3] Another exception operates when the defendant introduces documents not contained in the complaint; when this occurs, the court can consider the introduced documents without converting the motion to dismiss into one for summary judgment. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 432 (7th Cir. 1993) ("Federal Rule of Civil Procedure 10(c), which provides that '[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes,' is permissive in nature. A plaintiff is under no obligation to attach to her complaint documents upon which her action is based, but a defendant may introduce certain pertinent documents if the plaintiff failed to do so."); *Wright*, 29 F.3d at 1248. The Court notes that it could construe Defendants' stipulation to invoke this rule. In other words, because Defendants stipulated to the introduction of documents not contained in the complaint, the Court may treat it as if Defendants introduced the documents in their motion to dismiss.

judgment. The Court construes that stipulation to mean the parties agree that the materials submitted in their briefs "are referred to in the plaintiff's complaint and are central to his claim." *Wright*, 29 F.3d at 1248. The Court has examined these documents and finds that they satisfy this standard. The complaint refers to both the CBA and the Arbitration Opinion and Award. The CBA is central to Jones' claim against the Union and their responsibility to him. The Arbitration Award is similarly important, speaking to what issues and evidence the Union (failed to) raised and introduced during arbitration. Therefore, the Court considers the exhibits Jones attached to his brief under Rule 12(b)(6) without converting it to a motion for summary judgment.

### III. Standard on a Motion to Dismiss

The parties offer differing perspectives on the standard by which a court reviews a motion to dismiss. Every litigator knows that pleadings (with a few exceptions) should conform to FED. R. CIV. P. 8 ("Rule 8"), which requires, among other things, a "short and plain statement" of the claim showing that the plaintiff is entitled to relief. FED. R. CIV. P. 8(a)(2). The Supreme Court recently interpreted this standard in *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), which expounded upon its previous pleading-standard decision, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

In *Iqbal*, the Supreme Court held that "[t]he complaint must contain 'enough facts to state a claim to relief that is plausible on its face' and also must state sufficient facts to raise a plaintiff's right to relief above the speculative level." *Bissessur v. Indiana Univ. Bd. of Trustees*, No. 08-3504, 2009 WL 2902076, at *2 (7th Cir. Sept. 11, 2009) (quoting *Iqbal*, 129 S.Ct. at 1955). "A claim has facial plausibility 'when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 129 S.Ct. at 1949).

The Seventh Circuit has stated that *Iqbal* took an exception under Rule 8–the necessity of a plaintiff to plead factual grounds for its claim(s)–and memorialized it as a rule. *Cooney v. Rossiter*, Slip. Op. at 5-6, No. 08-3675, 2009 WL 3103998, at *2 (7th Cir. Sept. 30, 2009); *Bissessur*, 2009 WL 2902076, at *2 (stating that the plaintiff need not plead "detailed factual allegations," but "has the obligation to provide the factual 'grounds' of his entitlement to relief"). That conclusion, however, is tempered by the application of this rule, which is context-specific: "the height of the pleading requirement is relative to circumstances." *Cooney*, Slip Op. at 6, 2009 WL 3103998, at *3; *Iqbal*, 129 S.Ct. at 1950 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). This means the definition of plausibility will depend on the type of claim brought. Among the contexts in which the law heightens the pleadings standard of plausibility are complex litigation (*Twombly*), immunity (*Iqbal*), and conspiracy (*Cooney*). *Id.*

Contextualism, however, does not change *Iqbal*'s general principles, which apply to all pleadings under Rule 8. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (stating that *Iqbal* "clarified that *Twombly*'s plausibility requirement applies across the board, not just to antitrust cases"). The complaint must still provide notice to the defendants, which is unlikely where "factual allegations are . . . sketchy or implausible." *Brooks*, 578 F.3d at 581. That follows from *Iqbal*'s requirement that the pleadings state a "plausible claim for relief." 129 S.Ct. at 1950. This rule prevents formulaic recitations of statutory language or legal conclusions from counting as

factual statements that a court must accept as true. *Id.*; *Ross*, 578 F.3d at 581. Of course, where the plaintiff pleads facts, the court must accept them as true; but where he pleads legal conclusions or threadbare recitals of the claim's legal elements, they deserve no weight when a court decides a motion to dismiss.

## IV. Discussion

Applying the *Iqbal* standard to Jones' complaint requires a brief foray into a legal environment inhabited by a non-living organism known as the "hybrid action."[4] The Court examines the nature of this claim here because it relates to the sufficiency of the facts alleged in the complaint. Jones claims both a breach of a duty of fair representation and a breach of contract. Because these causes of action are separate (one against the employer and one against the union) but "inextricably intertwined," the Supreme Court has called this type of claim a "hybrid action." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164-65 (1983).

To succeed on a hybrid claim against its employer, the plaintiff must show that the union breached its duty of fair representation. *McLeod v. Arrow Marine Transp., Inc.*, 258 F.3d 608, 613 (7th Cir. 2001). Exclusive bargaining representatives of employees have a "duty of fair representation," which means they must represent all of those employees in good faith and honestly, avoiding arbitrary conduct. *United Steel Workers of Am. v. Rawson*, 495 U.S. 373, 372-73 (1990). The union breaches this duty "'only when . . . [its] conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith.'" *Id.* (quoting *Vaca v.*

---

[4] In this Opinion, the Court uses terms "hybrid action" and "hybrid claim" interchangeably.

*Sipes*, 386 U.S. 171, 177 (1967)); *McLeod*, 258 F.3d at 613. The court should assess each of these standards separately. *Garcia v. Zenith Elecs. Corp.*, 58 F.3d 1171, 1176 (7th Cir. 1995).

### A. Arbitrariness

The union behaves arbitrarily, and breaches its duty of fair representation, "only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness, 'as to be irrational.'" *McLeod*, 258 F.3d at 613 (quoting *Cleveland v. Porca Co.*, 38 F.3d 289, 295 (7th Cir. 1994) (quoting *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991))). Mere negligence is not enough to qualify as a breach of this duty. *Rawson*, 49 U.S. at 372-73; *Neal v. Newspaper Holdings, Inc.*, 349 F.3d 363, 369 (7th Cir. 2003) ("'[M]ere negligence, even in the enforcement of a collective-bargaining agreement, would not state a claim for breach of the duty of fair representation.'" (quoting *Rawson*, 495 U.S. at 372-73)); *Rupe v. Spector Freight Sys., Inc.*, 679 F.2d 685, 691 (7th Cir.1982) ("[I]f mere lack of diligence is alleged, it is clear that the employee must show something more than mere negligence[.]"). *See Thomas v. United Parcel Serv., Inc.*, 890 F.2d 909, (7th Cir. 1989) (stating that, "[a]lthough the union official serves as advocate for and counselor to the grievant, it is unreasonable to expect union officials to meet the same standards expected of an attorney in a court of law").

For a breach to occur, the union must show an "egregious disregard" for its members' rights. *Id.* (quoting *Garcia*, 58 F.3d at 1176). This test, which is "quite forgiving," provides unions with a large degree of discretion, and requires that they engage in only "some minimal investigation of employee grievances." *Id.* (quoting *Garcia*, 58 F.3d at 1176). The union is not

required "to take all member grievances to arbitration," as "it has discretion to act in consideration of such factors as the wise allocation of its own resources, its relationship with other employees, and its relationship with the employer." *Neal*, 349 F.3d at 369.

Applying this law and the *Iqbal* standard to the facts alleged, Jones factual allegations fall short of defeating the motion to dismiss. His complaint does not plead any facts that allow the Court to reasonably infer that the Union showed an "egregious disregard" for his rights. Indeed, the Union did more than a "minimal investigation"; it represented Jones in arbitration, and it pursued the theories there that it thought were best. The Court cannot infer from the facts pleaded by Jones that this representation was "irrational." Jones' complaint amounts to a negligence claim: the Union had a duty to pursue a particular theory of discharge, it breached that duty by not exploring that theory, and, therefore, it breached its duty of fair representation. But negligence is not enough for a hybrid claim to survive. To live, the complaint must plead facts showing egregious Union conduct, such that its behavior is so unreasonable to be characterized as irrational.

Jones' pleading that the Union arbitrarily "fail[ed] and refus[ed]" to do certain activities or prosecute the arbitration in a particular way does not meet this standard. The Union had discretion to choose to represent Jones in the arbitration in a manner it saw fit. Choosing how and in what way to pursue that representation is part of the discretion the law provides to the Union. Without more allegations regarding the Union's "arbitrariness," the Court finds Jones' complaint fails to state a cause of action for breach of fair representation.

## B. Bad Faith and Discriminatory Conduct

Jones also argues that the Union breached its duty of fair representation by acting in bad faith and in a discriminatory manner. "Whether or not a union's actions are discriminatory or in bad faith calls for a subjective inquiry and requires proof that the union acted (or failed to act) due to an improper motive," *Neal*, 349 F.3d at 369, which caused harm to the employee. *Garcia*, 58 F.3d at 1180.

Here too, the Court finds that Jones has failed to meet this standard. The allegations contained in paragraph 52 of his complaint allege that Defendant "fail[ed] and refus[ed]" to call certain witnesses and introduce certain evidence, including evidence of similarly situated black individuals. While his factual allegations are not mere conclusory assertions or threadbare recitals of statutory language, they do not allow this court to draw a reasonable inference that Defendants possessed an improper motive that caused harm to Jones. Simply refusing to introduce evidence of other black employees does not allow a reasonable inference of bad faith or discrimination–that would require at least some allegations about *why* this refusal was made. Thus, under this standard, Jones has failed to plead facts that state a plausible claim for a breach of duty of fair representation.

## V. Conclusion

For the foregoing reasons, the Court concludes that Jones' complaint does not state a claim for relief on the theory of breach of duty of representation. The Court dismisses

Jones' complaint without prejudice and gives him 21 days in which to file an amended complaint.

**ENTER ORDER:**

*[signature: Martin C. Ashman]*

**MARTIN C. ASHMAN**
United States Magistrate Judge

Dated: October 26, 2009.